IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Apr 29, 2015

| | |
|---|---|
| IN RE:<br><br>**RODNEY FILMORE ROTERT** and<br>**ROBERTA LOUISE ROTERT,**<br><br>    Debtors. | Case No. 14-11257-M<br>Chapter 7 |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,**<br><br>    Plaintiff,<br><br>v.<br><br>**RODNEY FILMORE ROTERT** and<br>**ROBERTA LOUISE ROTERT,**<br><br>    Defendants. | Adv. No. 14-01038-M |
| IN RE:<br><br>**MICHAEL L. McCUTCHEN,**<br>    Debtor. | Case No. 14-11601-M<br>Chapter 7 |
| **WILLIAM DENNIS INGRAM** and<br>**MICHELLE M. INGRAM,**<br><br>    Plaintiffs,<br><br>v.<br><br>**MICHAEL L. McCUTCHEN,**<br><br>    Defendant. | Adv. No. 14-01054-M |

**MEMORANDUM OPINION**

While it is safe to say the average person does not have a working knowledge of the United States Bankruptcy Code, one widely held belief is that someone who files bankruptcy gets to walk away from their debts.[1] Those who work hard to pay what they owe find little comfort in this concept. In order to preserve the integrity of and support for the bankruptcy process, two principles have emerged: (1) a discharge in bankruptcy is reserved for the "honest but unfortunate debtor,"[2] and (2) bankruptcy discharges are not for sale. While the first may not hold true in each and every case,[3] the second one is absolutely essential to the survival of the system.

These cases involve objections to discharge filed by creditors who wish to give up the fight. Settlements have been reached, each of which, if approved, will benefit the parties and result in the debtors being granted discharges. No one has objected; indeed, the United States Trustee supports both compromises. The question is whether the Court should approve them. The following findings and conclusions are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Jurisdiction**

The Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[4] Their reference to this Court is proper pursuant

---

[1] This statement is based upon almost 32 years' experience as a bankruptcy lawyer and judge. I will spare you the war stories.

[2] *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934).

[3] In most cases denial of discharge requires the filing of an adversary proceeding. If a discharge is not contested, one is granted as a matter of course. It would be naive to suggest that every dishonest debtor is the subject of a complaint objecting to discharge.

[4] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

to 28 U.S.C. § 157(a). Matters pertaining to the discharge of a debtor or the dischargeability of a debt are core proceedings as contemplated by 28 U.S.C. § 157(b)(2)(I) and (J).

## Background

### *Rodney and Roberta Rotert*

Rodney and Roberta Rotert (the "Roterts") filed their Chapter 7 bankruptcy petition on June 4, 2014. In their schedules, the Roterts listed $70,194 in assets, $587,433.34 in liabilities, and a total of 70 creditors.[5] However, they failed to include Philadelphia Indemnity Insurance Company ("Philadelphia") as a creditor, nor did the Roterts disclose pending litigation brought against them by Philadelphia in the District Court in and for Tulsa County, Oklahoma (the "State Court Litigation"). In the State Court Litigation, Philadelphia alleged that Rodney Rotert was involved in the theft of a 1967 Camaro (the "Camaro") from one of Philadelphia's insureds. Philadelphia sought recovery of the Camaro and other damages. In the course of that litigation, the Roterts posted a cash bond (apparently in favor of Philadelphia) in the amount of $5,500.

On July 21, 2014, Philadelphia filed an entry of appearance and a motion for relief from the automatic stay in the Roterts' bankruptcy case.[6] In the motion, Philadelphia alleged that Rodney Rotert owed Philadelphia more than $135,000. Philadelphia sought relief from the automatic stay in order to collect on the cash bond posted by Rodney Rotert in the State Court Litigation. The motion was not resisted. On August 25, 2014, the Court entered an order granting Philadelphia's

---

[5] *Case No. 14-11257-M, Docket No. 1 at 8 and 56.* The Court takes judicial notice of the Roterts' schedules on its own motion. To the extent the Court cites to additional pleadings in Case No. 14-11257-M, the Court also takes judicial notice of those pleadings on its own motion.

[6] *Id., Docket Nos. 17 and 20.*

3

motion for relief from the automatic stay.[7]

Philadelphia also filed an adversary proceeding against the Roterts.[8] In the adversary proceeding, Philadelphia claimed that the Roterts:

1. Failed to list Philadelphia as a creditor in their schedules, even though they knew of Philadelphia's claim;

2. Failed to list any interest in the Camaro as an asset in their schedules;

3. Failed to list the $5,500 cash bond as an asset in their schedules;

4. Failed to list a criminal action pending against Rodney Rotert in their statement of financial affairs;

5. Failed to list the lawsuit brought against them by Philadelphia in their statement of financial affairs;

6. Gave vague and incomplete answers regarding the disposition of assets in the year prior to the filing of their bankruptcy case; and

7. Failed to keep or preserve records necessary to determine what had happened to their assets.

Philadelphia also claimed that Rodney Rotert refused to answer questions at their first meeting of creditors, stating that he feared a perjury charge were he to answer questions pertaining to the Camaro. On the basis of these allegations, Philadelphia argued that the Roterts should be denied a discharge under § 727(a) (2),(3),(4), and/or (6) of the Bankruptcy Code.[9] The complaint contains no claim that the debt owed by the Roterts to Philadelphia is nondischargeable under § 523.

On August 14, 2014, the Roterts filed their answer to Philadelphia's complaint, admitting some but not all of the allegations. By way of defense, the Roterts alleged that they filed

---

[7] *Id., Docket No. 38.*

[8] *Adv. Proc. No. 14-01038-M.*

[9] *Id., Docket No. 1.*

amendments to their schedules addressing several of the deficiencies identified by Philadelphia.[10]

The adversary proceeding continued along a routine path. On September 23, 2014, a scheduling order was entered requiring that discovery be completed by February 20, 2015, and a proposed pretrial order be submitted on or before March 23, 2015.[11] All was quiet (at least from the Court's perspective) until February 24, 2015, when Philadelphia filed its motion to dismiss the adversary proceeding (the "Motion to Dismiss").[12] The Motion to Dismiss reveals that Philadelphia and the Roterts have agreed to settle their differences under these terms:

> The following consideration has been given in exchange for this Motion to Dismiss: the Debtors have agreed to release any claim they have to the abandoned '67 Camaro and the $5,500 bond, to enter into an Agreed Judgment in the civil case filed by Rodney Rotert in Tulsa County declaring Philadelphia to be the owner of the '67 Camaro and awarding Philadelphia the $5,500 bond, and to dismiss all other claims asserted in the Tulsa County civil case with prejudice. Philadelphia has agreed to dismiss this Adversary Proceeding and to release the Debtors from liability for its counterclaims in the Tulsa County civil case. [13]

In support of its Motion to Dismiss, Philadelphia alleged that "[f]urther prosecution of this Adversary Case would cost Philadelphia more than it could likely ever recover from the debtors. Under the circumstances, the Adversary Proceeding is now moot."[14] Notice of the Motion to Dismiss was given to all creditors and parties in interest in the Roterts' bankruptcy case. There have been no objections.

---

[10] Those amendments were filed on July 23, 2014, two days after Philadelphia filed its complaint. *See Case No. 14-11257-M, Docket Nos. 23 and 26.*

[11] *Adv. Proc. No. 14-01038-M, Docket No. 13.*

[12] *Id., Docket No. 14.*

[13] *Id. at ¶ 10.*

[14] *Id. at 1.*

5

The Court held a hearing on the Motion to Dismiss on April 7, 2015. Counsel for Philadelphia and the Roterts appeared, as did counsel for the City of Tulsa and the United States Trustee. No evidence was received at the hearing, save for a statement to the effect that Rodney Rotert previously pled no contest to a charge of possession of stolen property, i.e., the Camaro. Counsel for Philadelphia stated that his client had agreed to take whatever was left of the Camaro and collect the $5,500 bond in order to conclude this matter and "stop throwing good money after bad."

### *Michael McCutchen*

Michael McCutchen ("McCutchen") filed his Chapter 7 petition on July 21, 2014. In his schedules, McCutchen disclosed assets valued at $196,375 and total liabilities of $291,160.70.[15] Karen Carden Walsh ("Walsh" or "Trustee") is the duly appointed trustee in his case. Since the case was filed, Walsh has collected approximately $30,000 in estate funds. Walsh advised the Court that she expects to have $20,000 available for distribution to unsecured creditors after payment of administrative expenses.

Most of the contested issues in this case relate to McCutchen's ownership interest in Linda Mar, LLC ("Linda Mar"). Linda Mar operates a drive-in restaurant located in Tulsa, Oklahoma. Although McCutchen is the sole owner of Linda Mar, he failed to list the company as an asset in his original schedules.[16] On September 23, 2014, Walsh filed a motion seeking substantive consolidation of Linda Mar and McCutchen, alleging that, for all practical purposes, McCutchen and

---

[15] *Case No. 14-11601-M, Docket No. 1 at 6.*

[16] On December 29, 2014, some five months after the case was filed, McCutchen amended his schedules to include his interest in Linda Mar. *See id., Docket No. 37.*

Linda Mar were one and the same entity.[17]  McCutchen objected to substantive consolidation.  On January 12, 2015, Walsh and McCutchen filed a motion seeking approval of a compromise of the substantive consolidation issue.[18]  Under the terms of the proposed compromise, Linda Mar was to pay Walsh the sum of $12,500.  In exchange, Walsh agreed to recognize Linda Mar as a separate legal entity and discontinue her efforts to substantively consolidate McCutchen and Linda Mar.  In addition, Walsh agreed to allow McCutchen to keep his ownership interest in Linda Mar free and clear of any claims of the bankruptcy estate.  The compromise was properly noticed.  There were no objections, and the compromise was approved by order of the Court entered on February 10, 2015.[19]  The estate has received the $12,500 payment.  The settlement is now complete.

The other source of litigation activity in this case is a dispute between McCutchen and William Dennis Ingram and Michelle M. Ingram (the "Ingrams").  The Ingrams hold judgments against McCutchen for conversion, attorneys' fees, and costs awarded by the District Court in and for Tulsa County, Oklahoma.[20]  If one looks at the schedules filed by McCutchen, it appears that the Ingrams and McCutchen's former attorney are McCutchen's only unsecured creditors.[21]

The Court established December 29, 2014, as the deadline for filing claims in this case.  To date, a total of $14,419.46 in non-priority unsecured claims have been filed.  The Ingrams failed to

---

[17] *Id., Docket No. 15.*

[18] *Id., Docket No. 46.*

[19] *Id., Docket No. 63.*

[20] *Adv. Proc. No. 14-01054-M, Docket No. 1 at ¶ 6* (alleging the existence and amount of the judgments and attaching copies of same), and *Docket No 5 at ¶ 6* (admitting those allegations).

[21] *Case No. 14-11601-M, Docket No. 1 at 15–16; Docket No. 37 at 7.*

timely file a claim in McCutchen's case. On January 10, 2015, the Ingrams filed a motion for permission to file their proofs of claim out of time, alleging excusable neglect.[22] Although styled as a motion for leave to file a proof of claim out of time, the Ingrams really seek to have a late-filed claim treated as a timely filed claim for purposes of distribution.[23] McCutchen objected to the Ingrams' request on January 23, 2015.[24] The matter remains pending, subject to approval of the parties' proposed settlement described *infra*.

On October 17, 2014, the Ingrams filed an adversary proceeding against McCutchen seeking to deny his discharge or, in the alternative, have the debts owed them declared nondischargable. In their complaint, the Ingrams allege that McCutchen:

1. Borrowed money within one year prior to the filing of his bankruptcy petition (and less than three weeks after the Ingrams obtained their judgment against him) and caused the money to be paid to Linda Mar with the intent to defraud his creditors;

2. Failed to keep or preserve the records from which his financial condition and/or transactions might be ascertained, and withdrew significant sums of money from bank accounts without accounting for their use; and

3. Made several false oaths by failing to disclose his ownership interest in Linda Mar and the existence of various bank accounts in which he held an ownership interest.

On the basis of these allegations, the Ingrams claim that McCutchen should be denied a discharge under § 727(a)(2),(3), and/or (4) of the Bankruptcy Code. In addition, the Ingrams claim that McCutchen converted two of their motor vehicles and, as a result, the debt owed them as represented

---

[22] *Id., Docket No. 44.*

[23] The Ingrams do not need court permission to file a claim out of time. The timeliness of a claim merely affects its priority in distribution. *See* § 726(a)(2). Tardily filed general unsecured claims are paid only after all timely filed general unsecured claims have been paid in full.

[24] *Case No. 14-11601-M, Docket No. 55.*

8

by the judgment entered in Tulsa County District Court was nondischargeable under § 523(a)(2)(A) and/or (6).[25]

McCutchen filed his answer on November 19, 2014.[26] An agreed scheduling order was entered in the adversary proceeding on December 15, 2014. There was no additional activity in the court file until February 16, 2015, when the Ingrams and McCutchen filed a joint motion to approve their compromise, which was filed in McCutchen's bankruptcy case.[27] Under the terms of the proposed compromise:

1. McCutchen would pay the bankruptcy estate the sum of $5,000 for distribution to creditors;

2. McCutchen would withdraw his objection to the Ingrams' motion to file their proof of claim out of time;

3. The Ingrams would file a proof of claim in the amount of $85,681.09;

4. McCutchen would agree that of the amount he owes the Ingrams, $18,750 would be nondischargeable, with the understanding that any distribution received by the Ingrams in McCutchen's bankruptcy case would be credited against this nondischargeable debt;

5. The Ingrams would dismiss their adversary proceeding, thus paving the way for McCutchen to receive his discharge.

Notice of the proposed settlement was given to all creditors and parties in interest. There were no objections.

The Court held an evidentiary hearing on this compromise on April 7, 2015. At the hearing, counsel for the Ingrams stated that his clients had spent a significant amount of money litigating

---

[25] *Adv. Proc. No. 14-01054-M, Docket No. 1.*

[26] *Id., Docket No. 5.*

[27] *Case No. 14-11601-M, Docket No. 64.*

with McCutchen, and made an economic decision to put matters to an end. The Court received an offer of proof that McCutchen reviewed the original petition and schedules prior to signing them, and believed that they were true and correct at that time. The proffer also included the statement that, after questioning at the first meeting of creditors regarding his assets, McCutchen decided to amend the schedules. The Court does not know what transpired at the first meeting to inspire the amendments.

The Court has reviewed the claims register in the McCutchen case. Based upon that review, if the settlement were approved, and the Ingrams' claims in the aggregate amount of $85,681.09 were allowed as timely filed general unsecured claims, the Ingrams would receive approximately 86% of the funds distributed to general unsecured creditors.[28]

### Discussion

Dismissal of an adversary proceeding is governed by Federal Rule of Bankruptcy Procedure 7041. Rule 7041 contains the following provisions governing the dismissal of a complaint objecting to a debtor's discharge:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.[29]

Under this Court's local rules, dismissal of an objection to discharge is sought by motion served

---

[28] The Court arrived at this figure by reviewing the claims register, taking the stated amount of the general unsecured claims, adding the proposed amount of the Ingram claim to those claims, and then dividing the amount of the Ingram claim into that amount. Obviously, if any of the other unsecured claims are later disallowed, the percentage payable to the Ingrams would increase.

[29] Fed. R. Bankr. P. 7041.

10

upon all creditors and parties in interest. The motion must disclose any and all consideration given in exchange for the filing of the motion, and must provide parties with notice that they may seek permission to continue prosecution of the discharge objection.[30]

If consideration has been given in exchange for the dismissal of a complaint objecting to discharge, the transaction constitutes a compromise subject to court approval. The United States Court of Appeals for the Tenth Circuit has held that it is the court's duty to make an "informed [decision] based upon an objective evaluation of developed facts" when determining whether to approve a settlement or compromise.[31] The decision to approve or disapprove a settlement is left to the sound discretion of the bankruptcy court, and is reviewed for an abuse of that discretion.[32]

Courts have developed factors for consideration in whether to approve settlements. As a general rule, the factors to be considered include

1. Likelihood of success on the merits of the litigation;

2. Difficulties in collection of any judgment that may be obtained;

3. Complexity and expense of the litigation;

4. Interests of the creditors; and

5. Whether the settlement promotes the integrity of the judicial system.[33]

---

[30] Bankr. N.D. Okla. LR 7041-1.

[31] *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

[32] "An 'abuse of discretion' exists when the appellate court has 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' Abuse of discretion may occur when the bankruptcy court bases its decision on an erroneous conclusion of law." *Bank One v. Kallstrom (In re Kallstrom),* 298 B.R. 753, 757 (10th Cir. BAP 2003) (hereafter "*Kallstrom*") (citations omitted).

[33] *In re Bates*, 211 B.R. 338, 343 (Bankr. D. Minn. 1997).

This judge believes that promotion of the integrity of the judicial system is of paramount importance in the area of discharge litigation. When dealing with the settlement of objections to discharge,

> [i]t should be crystal clear to all concerned that the settlement of a § 727 action which calls for a payment to go *only* to the complaining creditor in return for dismissal of the adversary proceeding are highly disfavored and are unlikely to be approved. Such settlements create the appearance that a bankruptcy discharge is a commodity that is up for sale; and they fail to account for the interests of the estate and the remaining creditors in the § 727 action.
>
> It should also be clear that the decision of a private creditor to add a § 727 action to a complaint which also states a cause of action under § 523 should be very carefully considered. Adding a § 727 action to such a complaint for the primary purpose of bringing some additional "leverage" is likely to complicate the creditor's life much more than it is worth because of the public interest and policy considerations which come into play on account of that § 727 action.[34]

This Court does not care whether the proposed settlement is unopposed. "In the realm of discharge objection, the principles involved are too important, and the opportunity for abuse so high, that the Court must maintain a vigilant oversight role in connection with discharge objections, even in the presence of creditor inaction."[35]

> Restricting the issuance of discharges to honest debtors is important to the legitimacy and integrity of the bankruptcy process. Similarly, the legitimacy and integrity of the process requires that the § 727 discharge, a right created by Congress and adjudicated and granted by the federal courts, not be treated as a commodity. Accordingly, the discharge "is not a proper subject for negotiation and the exchange of a *quid pro quo*" between a debtor and creditors. In fact, such an exchange may be criminal. A creditor, therefore, may not initiate a § 727(a) proceeding as a tool in negotiating the nondischargeability of a debtor's debt to it. Furthermore, a debtor may not obtain a discharge by paying a creditor who has filed a § 727(a) complaint in exchange for dismissal of the complaint.[36]

---

[34] *In re McKissack*, 320 B.R. 703, 722 (Bankr. D. Colo. 2005).

[35] *In re Salinardi*, 307 B.R. 353, 362 (Bankr. D. Conn. 2004).

[36] *Kallstrom*, 298 B.R. at 758–59 (footnotes omitted); *see also In re McKissack*, 320 B.R. at 703 (refusing to approve a similar settlement).

Under no circumstances are discharges to be bought or sold, nor are they ever to be used as a bargaining chip in negotiations between debtors and creditors.

### *The Rotert Settlement*

The parties in the Rotert adversary have styled their arrangement as a motion to dismiss rather than a notice of settlement. The distinction is of form rather than substance. Boiled to its essence, the issues between the Roterts and Philadelphia involve ownership of the Camaro, entitlement to the $5,500 cash bond, and various and sundry other claims made by each party against the other, the details of which are not in the record before this Court. Under the terms outlined in the Motion to Dismiss, Philadelphia gets the Camaro, the cash bond, and dismissal of the Roterts' claims against it. In exchange, the Roterts get a discharge of indebtedness in excess of $587,000, and Philadelphia's pending state court claims against them cease to exist. This is the form of *quid pro quo* exchange disapproved by this Court in *Kallstrom*.[37] The Court also rejects the argument that the Philadelphia adversary proceeding is moot because Philadelphia has decided its pursuit no longer makes economic sense. The issues raised by the adversary proceeding remain unresolved, and are not rendered meritless as a result of Philadelphia's assessment of the economics of pursuing them.[38]

The settlement outlined in the Motion to Dismiss should not be approved, and dismissal of the adversary proceeding should be denied. The adversary proceeding raises serious questions about the Roterts' conduct in their bankruptcy case. The Court has no evidence from which it can assess

---

[37] *Kallstrom* originated in this Court. *See Case No. 01-02310-M and Adv. Proc. No. 01-00316-M*.

[38] Indeed, the last time this Court refused to approve such a settlement, the matter was tried, and the facts, once developed, overwhelmingly supported denial of the debtor's discharge. *See NJL Investments, LLC v. Smart (In re Smart)*, 481 B.R. 79 (Bankr. N.D. Okla. 2012).

the merits of the adversary proceeding.[39] The consideration paid for dismissal (namely, the Camaro, the cash bond, and the dismissal of the State Court Litigation) inures solely to the benefit of Philadelphia. In exchange for that consideration, the Roterts receive their discharge. Such an exchange will not be countenanced by this Court.

*The McCutchen Settlement*

The McCutchen settlement differs from the Rotert settlement in some respects. The consideration paid by McCutchen is being paid to the bankruptcy estate. The settlement resolves pending claims of nondischargeability, as well as the objection to discharge. In addition, the settlement resolves a claims allowance issue. However, like Rotert, the McCutchen case involves serious allegations of misconduct by a debtor in performance of his obligations in the bankruptcy case.

From McCutchen's perspective, this case revolves around retention of the restaurant ostensibly owned by Linda Mar and discharge of over $290,000 in debt. The restaurant issues have been resolved in McCutchen's favor. Under the terms of the settlement between McCutchen and the Ingrams (if approved), McCutchen will receive his discharge in exchange for payment of an additional $5,000. Assuming the entire $5,000 is distributed to general unsecured creditors and the claim of the Ingrams is allowed as timely filed, the Ingrams stand to receive approximately $4,300 out of the $5,000 paid, making the payment to Walsh instead of the Ingrams largely symbolic. Moreover, McCutchen would get credit for that amount against the non-dischargeable portion of the

---

[39] The only "evidence" before the Court is the uncontested representation by counsel for the City of Tulsa that Rodney Rotert previously pled no contest to a charge of possession of stolen property relating to the Camaro. This plea has little if any relation to omissions and false oaths alleged by Philadelphia in its adversary proceeding.

Ingrams' allowed claim.  The Court has no evidence regarding the merits of the § 727 claims,[40] or, for that matter, the Ingrams' request to have a late filed claim treated as one that was timely filed.[41] McCutchen is free to buy a restaurant from Walsh.  He may not buy a discharge from anyone.

### Conclusion

The Motion to Dismiss filed by Philadelphia is denied.  The settlement between McCutchen and the Ingrams is not approved.  The Court will enter separate orders in each case and adversary proceeding to that effect.

Dated this 29th day of April, 2015.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6870.8

---

[40] The parties may contend that McCutchen's amendments to his schedules show that the Ingrams are unlikely to prevail on their § 727 claim.  The Court disagrees.  There is ample authority to suggest that amendments to schedules made after the filing of a § 727 complaint or inquiry from creditors do not necessarily constitute a defense to such a claim.  *See, e.g., Wieland v. Gordon (In re Gordon)*, 509 B.R. 359, 374 (Bankr. N.D. Okla. 2014), *aff'd,* 526 B.R. 376 (10th Cir. BAP 2015); *Wieland v. Miller (In re Miller)*, 448 B.R. 551, 568–69 (Bankr. N.D. Okla. 2011).

[41] Under § 726(a)(2), if the Ingrams' claim were allowed as a tardily filed claim, they would be paid only after all timely filed general unsecured claims were paid in full, and would thus receive far less (if any) monies from the bankruptcy estate.  Accordingly, settlement of the motion to allow their claim as timely filed confers a considerable benefit upon the Ingrams at the expense of the other general unsecured creditors in the case.